UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
KENNETH CARROLL, et al.,

           Plaintiffs,

    -against-                                        05 Civ. 0391 (LAK)

LEBOEUF, LAMB, GREENE & MACRAE, L.L.P., et al.,

           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OPINION

Appearances:

    Blair C. Fensterstock
    Maureen McGuirl
    Robert L. Lash
    FENSTERSTOCK & PARTNERS LLP
    *Attorneys for Plaintiffs*


    Aaron R. Marcu
    Andrew A. Ruffino
    Philip A. Irwin
    Jason P. Criss
    COVINGTON & BURLING

    Brad D. Brian
    Richard E. Drooyan
    Bruce A. Abbott
    MUNGER & TOLLES

    *Attorneys for Defendants Sidley Austin Brown & Wood LLP
    and SABW Holding, L.L.P.*


    Stewart Edward Abrams
    FRANKEL & ABRAMS
    *Attorneys for Defendant R. J. Ruble*

LEWIS A. KAPLAN, *District Judge.*

Defendants Sidley Austin Brown & Wood LLP and SABW Holding, L.L.P. (collectively "Brown & Wood") and R.J. Ruble move to stay this action as to them pending arbitration. The Court assumes familiarity with the amended complaint and minimizes recounting of the facts.

This is an action against plaintiffs' former lawyers, accountants, and financial advisors to recover losses allegedly incurred as a result of plaintiffs' investment in a tax strategy involving foreign non-performing loans. Plaintiffs claim that defendants Roy Hahn and Chenery[1] developed the tax strategies at issue and that various attorneys (including Brown & Wood), accountants and financial advisors assisted them in their development and marketing. Ruble, a former Brown & Wood partner, allegedly provided a tax opinion on the strategies. The amended complaint seeks recovery under the Racketeer Influenced and Corrupt Organizations Act and on other theories, including fraud.

The amended complaint alleges no communication between plaintiffs and Brown & Wood and Ruble save for the tax opinion. Nevertheless, it seeks to hold movants liable for all of the alleged losses and for the conduct of other defendants on the theories, among others, that they conspired with them and that other defendants, including Hahn and Chenery, acted as their agents.[2]

Among the defendants with whom Brown & Wood and Ruble allegedly conspired

---

[1] "Chenery" refers to defendants Chenery Associates, Inc., Sussex Financial Enterprises, Inc., and Chenery Management, Inc.

[2] *See, e.g.,* Am. Cpt. ¶¶ 45-46, 49, 53, 61(g).

and had an agency relationship[3] was myCFO.[4] Plaintiffs contend that they decided to participate in the disputed tax strategy in reliance on representations made by myCFO "on behalf of all of the Promoters,"[5] a term defined to include Brown & Wood and Ruble, among others.[6]

Plaintiffs signed two agreements with myCFO entities, both of which contained broad arbitration clauses.[7] Brown & Wood and Ruble contend that they are entitled to compel plaintiffs to arbitrate their claims against them pursuant to these agreements on the alternative grounds that plaintiffs are (1) bound by their allegations that myCFO acted as their agent, and (2) equitably estopped to refuse to arbitrate. Plaintiffs dispute movants' right to invoke the myCFO arbitration clauses. While the matter has been argued at length, it is necessary to consider only plaintiffs' equitable estoppel argument.

"[U]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute" in this circuit

> "where a careful review of 'the relationship among the parties, the contracts they signed . . . and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement

---

[3] *E.g.,* Am. Cpt. ¶¶ 49, 51, 58.

[4] "myCFO" refers to myCFO, Inc., myCFO Securities, LLC, and myCFO Investment Advisory Services, LLC.

[5] *Id.* ¶¶ 59, 53-59.

[6] *Id.* ¶ 45.

[7] Irwin Decl. Ex. B, at KCB 0019, 0025. Specifically, it covers "any dispute between or among any of the parties arising out of, relating to or in connection with this Agreement, the Services provided or the Account." *Id.*

that the estopped party has signed.'"[8]

Here, plaintiffs allege a close relationship among Brown & Wood, Ruble and myCFO – they contend that myCFO acted as the agent of Brown & Wood and Ruble in promoting the tax strategies and conspired with them to plaintiffs' detriment. Indeed, they claim that they and myCFO acted together for years to promote tax strategies.[9] Nor can plaintiffs deny the connectedness of the claims asserted against Brown & Wood and Ruble and those against myCFO's successor, HarrismyCFO. Six of the claims against movants are identical to claims against HarrismyCFO.[10] The fact that the claims against movants do not arise under the myCFO agreements, while relevant, is but one factor to be considered in determining whether the claims are intertwined.[11]

Plaintiffs rely on *Stechler v. Sidley, Austin Brown & Wood, L.L.P.*,[12] a case involving another alleged tax shelter scheme in which Judge Scheindlin denied a motion by Brown & Wood to stay pending arbitration in superficially analogous circumstances. But *Stechler* does not warrant a similar result here, partly because the case is distinguishable in material respects and partly because

---

[8] *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001)).

[9] Plaintiffs seek to ignore their repeated allegations that myCFO acted in all relevant respects as movants' agent. This effort, however, is of no avail. *Id.* at 177 ("party attempting to resist arbitration was estopped from doing so because it had treated arguably non-signatory companies 'as a single unit' in its complaint in the related lawsuit.") (citing *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc.,* 198 F.3d 88, 98 (2d Cir. 1999)).

[10] Am. Cpt. counts 1, 5-9.

[11] Plaintiffs' suggestion that *JLM Industries* requires that the claims against movants arise under the myCFO agreements is quite incorrect.

[12] No. 04 Civ. 5923 (SAS), 2005 WL 774264 (S.D.N.Y. Apr. 15, 2005).

this Court does not agree with an important factor relied upon there.

Taking the second point first, *Stechler* said that the most important factor warranting denial of Brown & Wood's motion was the lack of any "indication in the record of any willingness on the [plaintiffs'] part to arbitrate their disputes with Brown & Wood."[13] With respect, this Court does not regard such a lack as material to the question whether a plaintiff who has signed an arbitration clause is estopped to prevent a non-signatory from compelling arbitration.

Arbitration, to be sure, is a creature of agreement, and it often is said that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[14] But this broad proposition is not applied literally.[15] One arguable exception is the well-accepted principle that even claims that merely "touch matters" covered by agreements containing broad arbitration clauses must be arbitrated.[16] The doctrine of equitable estoppel, as invoked by non-signatories to compel arbitration, is an even clearer example. The standard that governs such situations looks to the degree to which the issues sought to be arbitrated are "intertwined with the

---

[13] *Id.* at *8.

[14] *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 224 (2d Cir. 2001) (internal quotation marks omitted).

[15] *See, e.g.*, *Genesco, Inc. v. Kakiuchi & Co. Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987) (observing that in determining whether a party agreed to arbitration, the court's focus is "not on whether there was subjective agreement as to each clause in the contract, but on whether there was an objective agreement with respect to the entire contract.").

[16] *See, e.g., Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs, Inc,* 369 F.3d 645, 654 (2d Cir. 2004) (quoting *Smith/Enron Cogeneration Ltd. P'ship,* 198 F.3d at 99)).

agreement that the estopped party has signed," not to evidence that the estopped party actually intended or expected that any dispute with the nonsignatory would be subject to arbitration.[17] The doctrine therefore appears to depend upon the broad federal policy favoring arbitration and, at least in circumstances in which the estopped party will be arbitrating with counterparties to the agreement containing the arbitration clause – the situation here,[18] considerations of adjudicative economy, not consent.

At least one other aspect of *Stechler* is inapplicable as well. The *Stechler* Court opened its discussion by noting that the plaintiffs there had not treated Brown & Wood and the entities with which the plaintiffs had agreed to arbitrate "as though they were interchangeable and as a single unit," distinguishing *Smith/Enron*.[19] But this case is different. Here, as noted above, plaintiffs specifically and repeatedly allege that myCFO, among others, acted at all relevant times the agent of Ruble and Brown & Wood.[20] Moreover, the amended complaint lumps Brown & Wood, Ruble, myCFO, and others together under the sobriquet "Promoters" and treats them throughout as a unit. Plaintiffs' treatment of defendants here is quite similar to *Smith/Enron,* where the Second Circuit held that the fact that the party resisting arbitration in a prior lawsuit could not rely for that purpose on the separate corporate existence of a number of Enron affiliates that it had referred to

---

[17] *Choctow Gen. Ltd. P'Ship*, 271 F.3d at 406.

[18] Plaintiffs concede that they must arbitrate their claims against myCFO.

[19] *Stechler,* 2005 WL 774264, at *7.

[20] Am. Cpt. ¶ 46.

them collectively in a prior complaint as the "Enron Group."[21] Having elected to tar Brown & Wood and Ruble with the very broad brush that they applied to other defendants, plaintiffs' attempt to avoid arbitration by pointing to their distinctness is unpersuasive.

The degree of interrelatedness necessary to allow a non-signatory to compel arbitration is extremely fact dependent. Taking everything into account, this Court concludes that plaintiffs are equitably estopped to resist enforcement of the arbitration clauses by Brown & Wood and Ruble absent some other legal principle requiring a contrary result.

Plaintiffs attempt to avoid equitable estoppel by contending that Brown & Wood and Ruble may not enforce the arbitration clause against plaintiffs because contracts between attorneys and their clients are subject to special rules in both of the potentially relevant states, New York and New Jersey. This argument, however, is undermined by the fact that Brown & Wood and Ruble do not here invoke any contract between them and the plaintiffs. Rather, they maintain that plaintiffs are estopped to refuse arbitration pursuant to their contracts with myCFO. In consequence, even assuming that the ethical rules relating to attorney-client transactions would foreclose enforcement of these arbitration clauses if they were in agreements between plaintiffs and Brown & Wood and Ruble, they have no direct bearing here. Nor does the Court perceive any reason why an attorney may not assert equitable estoppel to compel arbitration by former clients in circumstances in which, as here, the former clients' agreement to the arbitration clauses in their contracts with a third party is not allegedly a product of overreaching by the attorney. Plaintiffs cite no case that suggests otherwise.

---

[21] *Smith/Enron,* 198 F.3d at 97-98.

Accordingly, the motions of defendants Sidley Austin Brown & Wood LLP and SABW Holding, L.L.P. [docket item 82], and Ruble [docket item 86], to stay this action as against them pending arbitration are granted.

SO ORDERED.

Dated: June 28, 2005

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)