UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KENNETH CARROLL, et al.,

                            Plaintiffs,

              -against-                                          05 Civ. 0391 (LAK)

LEBOEUF, LAMB, GREENE & MACRAE, L.L.P., et al.,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM AND OPINION

              Appearances:


                            Blair C. Fensterstock
                            Matthew J. Wojtkowiak
                            FENSTERSTOCK & PARTNERS LLP
                            *Attorneys for Plaintiffs*

                            Daniel T. Bernhard
                            FREELAND COOPER & FOREMAN LLP
                            *Attorney for Defendants*


LEWIS A. KAPLAN, *District Judge.*

              This is an action by Kenneth Carroll and members of his family for, among other

things, alleged fraud and negligent misrepresentation in the inducement of their participation in an

allegedly abusive tax shelter.  The action has been resolved with respect to all defendants except

Chenery Associates, Inc., Chenery Management, Inc. and Sussex Financial Services, Inc.

(collectively, "Chenery").  Chenery, which allegedly was a promoter of the tax shelter scheme in

which the plaintiffs "invested," has moved for summary judgment dismissing the complaint.  It

argues, *inter alia,* that it made no actionable misrepresentations to plaintiffs.

Plaintiffs' opposition to the motion relies on the contention, among others, that Chenery sent two letters to plaintiffs in which it represented that it had retained two prominent New York law firms to advise on federal tax issues but failed to disclose the identities of the law firms or the fact that they had acted as promoters of the tax shelter, thus precluding plaintiffs from relying on their opinions to avoid penalties.[1]  Plaintiffs did not produce the originals of the alleged letters despite Chenery's request, explaining that they did not have them.[2]

Chenery moves to exclude the copies of the two purported letters proffered by plaintiffs on the ground that the copies are unreliable, that plaintiffs have failed to adduce sufficient evidence to permit a finding that they are authentic, and that the best evidence rule forecloses receipt of the copies in evidence in view of the existence of genuine questions as to the authenticity of the originals.[3]

*Facts*

The two documents relied upon by plaintiffs purport to be copies of letters on Chenery Associates letterhead, signed by Chenery's principal Roy E. Hahn, and dated November 28

---

[1]

*See* Pl. Mem. 9, 14, 20-22 (referring to Fensterstock Aff. Exs. 11, 23);

Taxpayer reliance on competent advice from an independent tax professional may preclude the imposition of penalties. *See, e.g., Neonatology Associates, P.A. v. Comm'r,* 299 F.3d 221, 234 (3d Cir. 2002); *Durrett v. Comm'r,* 71 F.3d 515, 518 (5th Cir. 1996); *Stobie Creek Investments, LLC v. United States,* 82 Fed. Cl. 636, 718-20 (2008).

[2]

DI 260 (Bernhard Decl.) ¶ 2 & Ex. A.

[3]

DI 260, *passim*; DI 261, at 3-4.

and December 10, 2001.[4]  They were submitted as attachments to the affidavit of plaintiffs' counsel, who described them as "true and correct cop[ies] of . . . letter[s] dated November 28, 2001 [and December 10, 2001] from Chenery Associates, Inc. to Kenneth Carroll, which w[ere] produced by Plaintiffs . . . and marked as [exhibits] at the deposition of Mr. Carroll on January 17, 2007."[5]  While the Court assumes that plaintiffs' counsel has personal knowledge that the exhibits to his affidavit – the purported copies – were produced by the plaintiffs and marked as exhibits at the Carroll deposition, his affidavit does not show that he is competent to testify that the documents in fact are true and correct copies of letters actually prepared by Chenery Associates, Inc. and actually sent to Kenneth Carroll.  Indeed, it does not even claim that counsel or his client ever has seen the originals. The most that properly may be said is that counsel's affidavit would permit the inference that his client gave him the papers attached to his affidavit and, perhaps, that his client told him that these papers were received by him from Chenery Associates.  But plaintiffs have provided no affidavit or declaration of Mr. Carroll as to whether the papers in fact were received by him from Chenery Associates, or for that matter, anyone else.

*Exhibit 23*

Mr. Hahn, whose name appears in cursive script at the foot of the purported copy of each letter, was questioned about each at his deposition.   When shown the copy of the purported

---

[4]     DI 257 (Fenstock Aff.) Exs. 11, 23.

[5]     DI 257 (Fenstock Aff.) ¶¶ 17, 29.

4

letter marked as Exhibit 23, Mr. Hahn stated that he had never before seen it and had not signed it.[6]
He said the apparent signature did not look like his own because it appeared "larger than life," and
he denied possessing a signature facsimile stamp.[7]  He testified further that his Chenery associate,
Ms. May Kwan, would not have signed his name to a letter if he had not read and approved it first
and that myCFO, another participant in the transaction, did not have access to Chenery letterhead.[8]
He stated also that the letter did not appear to have been printed on Chenery's letterhead because the
footer containing Chenery's address was not printed in the font or type size used by the company.[9]

Mr. Hahn testified further that he "[c]learly did not draft th[e] letter" because it
contained at least one phrase he never used.[10]  Moreover, he noted that the letter described a Bank
Mandiri transaction as a "current opportunity" as of December 10, 2001, but said that the Bank
Mandiri transaction had "crashed" on August 12, 2001.  He testified that he was "100 percent sure
[he] would have not written th[e] paragraph representing" that transaction as still being available in
December because the transaction had been "an especially painful undertaking."[11]  Finally, Mr. Hahn
testified that he did not know of the arrangement described at paragraph 3 of the letter as having been

---

[6]
       DI 260 (Bernhard Dec.) Ex. B at 151:21-152:6.

[7]
       *Id.* at 152:22-153:4.

[8]
       *Id.* at 154:7-155:8.

[9]
       *Id.* at 155:9-23.

[10]
       *Id.* at 153:15-19.

[11]
       *Id.* at 153:19-154:6.

made by Chenery.[12]

*Exhibit 11*

Mr. Hahn stated also that he had not drafted Exhibit 11 either and, furthermore, that he had been in China on the date that appears on that document.[13]   He indicated that, although the signature resembled his, it was, like the signature on Exhibit 23, larger than his normal signature.[14] He stated also that the letterhead used for pages 2 through 5 was not Chenery's letterhead. Moreover, he pointed out that the letterhead was internally inconsistent, as pages 2 through 5 did not match page 1.[15]

*Discussion*

FEDERAL RULE OF CIVIL PROCEDURE 56(e) provides that "[s]upporting and opposing affidavits [on summary judgment motions] shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."[16]   Were there any doubt as to its meaning, it long ago was eliminated by a parade of decisions making clear that only admissible evidence may be considered

---

[12]
    *Id.* at 157:7-17.

[13]
    *Id.* at 161:8-162:4.

[14]
    *Id.* at 160:13-18.

[15]
    *Id.* at 161:12-17.

[16]
    FED. R. CIV. P. 56(e).

in passing on motions for summary judgment.[17]

The first problem with regard to the admissibility of Exhibits 11 and 23 is that plaintiffs' counsel's affidavit does not demonstrate that he is competent to testify that the original documents of which the exhibits are said to be copies actually were written by Chenery or received by Mr. Carroll and thus competent to say that the exhibits are copies of any such originals.  If they were not, they are not relevant.  And, of course, evidence that is not relevant is not admissible.[18]  In other words, the exhibits present a conditional relevancy question.[19]  Plaintiffs, as the proponents of the evidence, bore the burden of introducing evidence sufficient to warrant finding that (1) the original documents of which the exhibits purport to be copies indeed were authored by Chenery and received by Mr. Carroll and (2) the exhibits are true copies of such originals.[20]  They have offered no such evidence.

This question may be viewed as one of authenticity, but the result would be the same. Rule 901 provides:

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter

---

[17]

*E.g.*, *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 123-24 (2d Cir.2001); *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 746 (2d Cir.1998); *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir.1997).

[18]

FED. R. EVID. 402.

[19]

*See* FED. R. EVID. 104(b).

[20]

*United States v. Almonte*, 956 F.2d 27, 30 (2d Cir. 1992) ("The party proffering the evidence bears the burden of proving "a rational basis for concluding that an exhibit is what it is claimed to be.") (quoting *United States v. Hon*, 104 F.2d 803, 809 (2d Cir. 1990)).

in question is what its proponent claims."[21]
The Advisory Committee Notes explain that authentication is treated as a type of conditional relevancy under Rule 104(b). So, again, it was plaintiffs' burden to adduce admissible evidence sufficient to show that the exhibits are reasonably likely to be what they purport to be – true copies of originals actually written by Chenery and received by Mr. Carroll.[22] Again, counsel's affidavit is not such evidence. The Court therefore excludes Exhibits 11 and 23. Indeed, it does so without reference to Mr. Hahn's testimony. Mr. Hahn's testimony, however, provides an independent basis for this result.

The best evidence rule requires generally that "[t]o prove the content of a writing, . . . the original . . . is required."[23] While a duplicate of an original is generally admissible "to the same extent as an original," Rule 1003 authorizes a court to exclude a duplicate where "a genuine question is raised as to the authenticity of the original[.]"[24]

Mr. Hahn's testimony that he did not write the letters, that the signatures on them are not his, and that other circumstances relating to the content of the copies suggest that either the originals or the copies are forgeries raises genuine questions as to the authenticity of both.

The Court recognizes that, at first blush, there might appear to be an inconsistency

---

[21]

    FED. R. EVID. 901(a).

[22]

    *Almonte*, 956 F.2d at 30; *United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001) (citing *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994)).

[23]

    FED. R. EVID. 1002.

[24]

    FED. R. EVID. 1003; *Opals on Ice Lingere v. Body Lines, Inc.*, 320 F.3d 362, 371 (2d Cir. 2003).

8

between admitting evidence involving questions of conditional relevancy and authenticity upon introduction of evidence sufficient to permit a finding favorable to the proponent and excluding a copy offered to prove the content of an original if there is a genuine question as to the authenticity of the original.  On analysis, however, any apparent inconsistency disappears.

Conditional relevancy and authenticity, assuming the existence of *prima facie* evidence on the point, present classic questions of fact for the jury or, in a bench trial, the judge.  But the best evidence rule, the rigor of which is eased by Rule 1003, implicates additional considerations.

The common law required production of the original of any document offered in evidence in order to ensure that the trier of fact had the "best evidence" of the content of the document, which of course is the document itself.  In an age in which copying machines permit the routine production of exact copies, adherence to the common law rule usually is unwarranted because the nature of the modern copying process affords substantial protection against fraud, error and mistake in consequence of the use of copies in place of originals.[25]  Rule 1003 therefore permits the use of copies rather than originals, but with an important proviso – the original, rather than a copy, still must be produced if there is "a genuine question . . . as to the authenticity of the original."

There is a sound reason for this proviso.  As Judge Weinstein has pointed out:

"The original [of a document] may contain, and the copy may lack, such features as handwriting impressions, type of paper, and the like as may afford the opponent valuable means of objecting to admissibility.  For example, the original may be a pasted-together version that gives an entirely different impression than a smooth photocopy."[26]

---

[25]   *See* FED. R. CIV. P. 1003, Adv. Comm. Note to 1972 Proposed Rules.

[26]   6 JOSEPH M. MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE § 103.03[4] (2008).

9

Thus, Rule 1003 excludes a copy where there is a genuine dispute as to the authenticity of an original as an added protection against the receipt of evidence as to the content of the originals where the original itself might provide evidence of forgery or fraud that cannot be discerned from a copy.  The doubts  borne of Mr. Hahn's testimony as to the authenticity of the originals of which Exhibits 11 and 23 purport to be copies therefore are sufficient to exclude those copies under the best evidence rule.

*Conclusion*

For the foregoing reasons, defendants' request to exclude Exhibits 11 and 23 [docket item 261] is granted.

SO ORDERED.

Dated:        May 7, 2009

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)